UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

GERSON PELAGIO SUAREZ & STEFAN VAN DER END,

Defendants.

No. 16-cr-453 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

On April 24, 2017, Defendants Gerson Pelagio Suarez ("Suarez") and Stefan Van Der End ("Van Der End," and together with Suarez, "Defendants") moved to dismiss the indictment in this action. (Doc. Nos. 41, 45.) For the reasons set forth below and on the record at the Court's May 4, 2017 pretrial conference, Defendants' motion to dismiss is denied.

I. BACKGROUND

On May 23, 2016, a Coast Guard cutter (the "Cutter") intercepted a vessel called the *Sunshine* in international waters approximately 300 nautical miles northeast of Bermuda. (Doc. No. 43-1 at 3.) The Cutter sent a law enforcement boarding team (the "Board Team") on a smaller patrol boat to ascertain the vessel's nationality. Richard Dow, the master of the *Sunshine* and a Canadian national, informed the Board Team that the *Sunshine* was registered in St. Vincent and the Grenadines ("SVG") and that Dow and his fellow crew members Van Der End and Suarez – who are both Dutch – were sailing the ship from Grenada to Nova Scotia, Canada. (*Id.*; Doc. No. 43 at 2.) According to the government, the Board Team noticed that the *Sunshine* was sitting low in the water, suggesting it was weighed down by something heavy on board, and also observed other suspicious behavior on the part of the crew, including the fact that they had not pulled into port to fix malfunctioning equipment and to avoid highly turbulent weather. (*Id.*)

Based on this information, the Coast Guard determined that it had the authority to board the *Sunshine* pursuant to a bilateral treaty between the United States and SVG, which authorizes such boarding whenever Coast Guard officials encounter an SVG vessel suspected of "illicit traffic." (*Id.* at 2–3.) The government alleges that the Coast Guard's search uncovered over 1,200 kilograms of cocaine aboard the *Sunshine*. (Doc. No. 43 at 3.)

After the Coast Guard contacted the SVG government concerning the *Sunshine*'s registration status on May 24, 2016, SVG authorities provided the Coast Guard with the *Sunshine*'s certificate of registration on May 25, 2016, which showed that the *Sunshine* had been previously registered in SVG, but that its registration had expired three months earlier on February 25, 2016. (Doc. No. 44-1 at 3.) In a follow-up communication on May 25, 2016, SVG authorities confirmed to Coast Guard officials that the vessel was no longer subject to SVG's jurisdiction. (*Id.* at 2.) On July 8, 2016, Gregory M. Tozzi, a Commander of the United States Coast Guard and a legal designee of the United States Secretary of State, signed a certification attesting to the facts of the *Sunshine*'s interdiction, SVG's refutation of the vessel's claimed nationality, and the government's determination that the *Sunshine* – as a vessel without nationality – was subject to United States jurisdiction. (Doc. No. 43-1.)

## II. Procedural History

On June 26, 2016, Defendants were indicted by a grand jury in this district on two counts under the Maritime Drug Law Enforcement Act ("MDLEA"). Specifically, the indictment charged Defendants with (1) manufacture and distribution, and possession with intent to manufacture and distribute, five kilograms and more of mixtures and substances containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), 70506(a), 18 U.S.C. §§ 3238 & 2, and 21 U.S.C. § 960(b)(1)(B), and (2) conspiracy to do the same, in violation of 46 U.S.C. §§

70503, 70506(b), & 70504(b)(1), 18 U.S.C. § 3238, and 21 U.S.C. § 960(b)(1)(B). (Doc. No. 13.) Although originally assigned to Judge Crotty, the case was reassigned to my docket on April 19, 2017. On April 25, 2017, co-defendant Richard Dow pleaded guilty before the Honorable Kevin N. Fox, United States Magistrate Judge. (Doc. No. 47.)

On April 24, 2017, Defendants moved to dismiss the indictment on four grounds: (1) the *Sunshine* was not a "vessel subject to the jurisdiction of the United States" under the MDLEA, *see* 46 U.S.C. § 70503(e)(1); (2) the prosecution of Defendants violates the Due Process Clause of the Fifth Amendment of the United States Constitution; (3) the government lacks authority under the Define and Punish Clause of Article I, Section 8 of the Constitution to prosecute Defendants, and (4) the Southern District of New York is an improper venue. (Doc. Nos. 41, 42, 45.) The Court held oral argument on May 4, 2017, at which time it issued an oral order denying the motion to dismiss. After the Court denied the motion to dismiss, Defendants entered unconditional guilty pleas to the indictment.

III. DISCUSSION

A. Waiver

The Court first addresses the issue of waiver. "A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings," unless the defendant has "obtain[ed] the approval of the court and the consent of the government" to enter a conditional guilty plea and has "reserve[d] the right to appeal in writing." *United States v. Coffin*, 76 F.3d 494, 496–97 (2d Cir. 1996) (citing Fed. R. Crim. P. 11(a)(2)); *accord United States v. Yousef*, 750 F.3d 254, 258 (2d Cir. 2014) ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." (citation omitted)). However, "subject matter jurisdiction . . . can never be

3

forfeited or waived," since "it involves a court's power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, "in order 'to attack a conviction post-plea, a defendant must establish that the district court lacked the power to entertain the prosecution.'" *Yousef*, 750 F.3d at 259 (quoting *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010)).

Here, Defendants have indicated that they may appeal their forthcoming convictions and assert that certain of their arguments in support of dismissal implicate the Court's subject matter jurisdiction.[1] In the interests of clarifying the record and elucidating its reasons for denying the motion to dismiss, the Court assumes, without opining, that Defendants' arguments were not waived, and addresses each of Defendants' arguments in support of dismissal.

## B. "Subject to the Jurisdiction of the United States"

The Court next turns to Defendants' contention that the indictment should be dismissed because there is insufficient evidence to establish that the *Sunshine* was "subject to the jurisdiction of the United States." (Doc. No. 42 ("Mem.") at 2–5.) The MDLEA makes it unlawful to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance," "[w]hile on board a covered vessel," 46 U.S.C. § 70503(a)(1), or to conspire to do so, 46 U.S.C. § 70506(b). There are several terms of art within the MDLEA that require explication here. First, "a covered vessel" includes a "vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1). The MDLEA, in turn, provides that "a vessel without nationality" is a "vessel subject to the jurisdiction of the United

---

[1] Indeed, there is a circuit split over whether the "vessel subject to the jurisdiction of the United States" provision implicates subject matter jurisdiction. *Compare United States v. Miranda*, 780 F.3d 1185, 1192 (D.C. Cir. 2015) ("[T]he question whether a vessel is 'subject to the jurisdiction of the United States' is a matter of subject-matter jurisdiction."); *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (same); *United States v. Bustos-Useche,* 273 F.3d 622, 626 (5th Cir. 2001) (same), *with United States v. Gonzalez*, 311 F.3d 440, 443 (1st Cir. 2002) (concluding that the provision "refers to the substantive reach of the *statute* – applying to some vessels but not others – and not to the subject matter jurisdiction of the court"). The Second Circuit is currently considering this very issue in a pending appeal for which oral argument was held on May 10, 2017. *See United States v. Prado*, No. 15-cr-455 (JSR), Doc. Nos. 56, 57, 58 (S.D.N.Y. Apr. 5, 2016), *appeal docketed*, No. 16-1055 (2d Cir. Apr. 7, 2016).

4

States." 46 U.S.C. § 70502(c)(1)(A). A "vessel without nationality" includes a vessel aboard which "the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed." 46 U.S.C. § 70502(d)(1)(A). Pursuant to Section 70502(e)(3), "a verbal claim of nationality or registry by the master or individual in charge of the vessel" is a "claim of nationality or registry." 46 U.S.C. § 70502(e). Under the MDLEA, "the response of a foreign nation to a claim of registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2).

Here, Defendants make a series of arguments that the *Sunshine* was not, in fact, stateless under the SVG's Shipping Act and under international law. (*See* Mem. 2–5.) But Defendants' arguments are inapposite. The government has proffered that it will offer evidence that Dow, the master of the ship, claimed to the Coast Guard that the *Sunshine* was registered in SVG. (Doc. No. 51 at 22–23.) Furthermore, the government has produced a certification from the United States Department of State, which indicates that the SVG government "refuted the vessel's claimed nationality." (Doc. No. 43-1.) Since the "response of a foreign nation to a claim of registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee," 46 U.S.C. § 70502(d)(2), the government has conclusively demonstrated that Dow's claim to SVG registration was in fact denied by SVG's government. Therefore, the government has established that the *Sunshine* was subject to the jurisdiction of the United States. *See United States v. Campbell*, 743 F.3d 802, 809 (11th Cir. 2014) (opining that the State Department's "certification is conclusive proof of a response to a claim of registry" and therefore "provide[s] conclusive proof that the vessel was within the jurisdiction of the United States under the Act"); *United States v. Cardales-Luna*, 632 F.3d 731, 737 (1st Cir. 2011) (State Department's "certification is 'conclusive[],' and any further question about its legitimacy is 'a question of international law that can be raised only by the foreign nation'" (quoting *United States v. Bustos-*

5

*Useche*, 273 F.3d 622, 627 & n.5 (5th Cir. 2001))); *see also United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 159 (D.D.C. 2015) ("The [vessel's] status as a 'vessel subject to the jurisdiction of the United States' is proven conclusively by the State Department certification provided by the government.").

Defendants have also argued, in the alternative, that any determination as to the *Sunshine*'s statelessness by the Court is premature, and that they should be permitted to make arguments concerning jurisdiction to the jury. (Doc. No. 53 at 3.) But under the MDLEA: "Jurisdiction of the United States with respect to a vessel subject to this chapter is *not an element* of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined *solely by the trial judge*." 46 U.S.C. § 70504(a) (emphasis added). Congress added this language to Section 70504 for the express purpose of "expand[ing] the Government's prosecutorial effectiveness in drug smuggling cases." *United States v. Gonzalez*, 311 F.3d 440, 447 (1st Cir. 2002) (Torruella, J., concurring) (discussing and quoting the legislative history). Consistent with the plain language of the statute and legislative history, most circuits that have addressed the issue have concluded that Section 70504(a) "removes the issue of jurisdictional determination from being an element of the offense for the jury to decide." *United States v. Rendon*, 354 F.3d 1320, 1327 (11th Cir. 2003); *accord United States v. Miranda*, 780 F.3d 1185, 1193 (D.C. Cir. 2015) (whether a vessel under the MDLEA is subject to the jurisdiction of the United States is "a question of law for resolution by the court"); *United States v. Guerrero*, 114 F.3d 332, 340 n.9 (1st Cir. 1997) ("United States jurisdiction over vessels is no longer an element of an offense, but rather, a preliminary question of law for the trial judge."); *see also United States v. Vilches-Navarrete*, 523 F.3d 1, 12 (1st Cir. 2008) (affirming district court's jury instruction "that as a matter of law the motor vessel . . . was subject to the jurisdiction of the United States").

Defendants acknowledge these decisions of the First, Eleventh, and D.C. Circuits. Nonetheless, they point to a 2-1 decision in the Ninth Circuit concluding that, "[n]otwithstanding the statutory language of" of the MDLEA, the right to due process guaranteed by the Fifth Amendment and the right to jury trial under the Sixth Amendment require the jury to resolve factual disputes relevant to a ship's jurisdictional status, and that Section 70504(a) is unconstitutional. *United States v. Perlaza*, 439 F.3d 1149, 1166–67 (9th Cir. 2006) ("When that jurisdictional inquiry turns on 'factual issues,' such as . . . 'where the vessel was intercepted' . . . or . . . whether the [ship] was stateless, the jurisdictional inquiry *must* be resolved by a jury." (brackets and internal citations omitted)). In other words, the Ninth Circuit concluded that the MDLEA's jurisdictional provision presents one of the "'limited circumstances' in which 'facts not formally identified as elements of the offense charged' must be submitted to the jury and proved beyond a reasonable doubt" under the Fifth and Sixth Amendments. *Id.* (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 85 (1986)).

The Court finds the Ninth Circuit's reasoning to be unpersuasive. It is true that "the Supreme Court has suggested that when certain types of facts, though labeled as something other than elements by the legislature, are 'traditional elements' of an offense, the constitutional safeguards provided by the Due Process Clause and the Sixth Amendment right to a jury trial still may apply." *United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002) (quoting *Jones v. United States*, 526 U.S. 227, 241–42 (1999)); *see also Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (quoting *Jones*, 526 U.S. at 243 n.6). Even so, within these "broad constitutional bounds, legislatures have flexibility in defining the elements of a criminal

7

offense." *United States v. Gaudin*, 515 U.S. 506, 525 (1995) (Rehnquist, C.J., concurring); *Staples v. United States*, 511 U.S. 600, 604 (1994) ("[D]efinition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.") (quoting *Liparota v. United States*, 471 U.S. 419, 424 (1985))); *McMillan*, 477 U.S. at 86 ("[W]e should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.").

The Fifth and Sixth Amendments are not implicated where, as here, the question to be resolved – the issue of jurisdiction – neither alters "the presumption of a defendant's innocence" nor "subject[s] the defendant to an increased penalty," and there was "no evidence that Congress was attempting to evade defendants' constitutional rights." *Vilches-Navarrete*, 523 F.3d at 20 (citing *McMillan*, 477 U.S. at 86–90); *accord Tinoco*, 304 F.3d at 1107 (citing *Apprendi*, 530 U.S. at 490 and *McMillan*, 447 U.S. at 86–87). To the contrary, the MDLEA's "jurisdictional requirement is intended to act as a diplomatic courtesy, and does not bear on the individual defendant's guilt." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016); *United States v. Greer*, 285 F.3d 158, 175 (2d Cir. 2002) ("[T]he MDLEA requires the consent of foreign nations for purposes of international comity and diplomatic courtesy, not as a protection for defendants."); *Tinoco*, 304 F.3d at 1108 (observing that "the jurisdictional requirement was inserted into the statute as a diplomatic courtesy to foreign nations and as a matter of international comity in order to avoid 'friction with foreign nations'" (quoting *United States v. Gonzalez*, 776 F.2d 931, 940 (11th Cir. 1985))); *see also Vilches-Navarette*, 523 F.3d at 22 ("It is misleading . . . to consider [a foreign nation's] consent an element of the offense; rather, it is a diplomatic requisite illustrating the international partnership that ensures the rule of law on the high seas." (quoting *Gonzalez*, 776 F.2d at 940)).

Furthermore, "[u]nder historical practice the determination of whether a vessel is subject to the jurisdiction of the United States would not be an essential element of the offense." *Vilches-Navarrete*, 523 F.3d at 21. Rather, the historical elements of a crime "included 'each part of the *actus reus*, causation, and the *mens rea*.'" *Id.* (quoting and following *Tinoco*, 304 F.3d at 1108); *see also id.* (noting that, "in determining whether legislatures have transgressed constitutional boundaries in defining elements of a crime, the Supreme Court has given great weight to the historic treatment of particular categories of facts" and citing *United States v. Gaudin,* 515 U.S. 506, 515 (1995)). Therefore, this Court declines to follow the holding of the Ninth Circuit and instead follows the plain language of the statute, and the reasoning of the First, Eleventh, and D.C. Circuits.

At oral argument, Defendants for the first time asserted a corollary argument that the government could not, consistent with the Confrontation Clause of the Sixth Amendment, introduce the affidavit of the State Department without affording Defendants the opportunity to cross examine Commander Tozzi, the affiant. To be sure, the Confrontation Clause "prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 135 S. Ct. 2173, 2179 (2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)). "Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt." *Cruz v. New York*, 481 U.S. 186, 190 (1987); *see also Davis v. Washington*, 547 U.S. 813, 825 (2006) (favorably citing *Dowdell v. United States*, 221 U.S. 325, 330–31 (1911), in which the Supreme Court concluded that "facts regarding conduct of prior trial certified to by the judge . . . did not relate to defendants' guilt or innocence," and therefore "were not statements of 'witnesses' under the Confrontation Clause"). Here, as set

forth above, the MDLEA's "jurisdictional requirement is intended to act as a diplomatic courtesy, and does not bear on the individual defendant's guilt." *Cruickshank*, 837 F.3d at 1192. Therefore, because Tozzi's certification is *not* "part of the body of evidence that the jury may consider in assessing his guilt," *Cruz*, 481 U.S. at 190, Tozzi is not functioning as a "witness" against Defendants and he need not testify in order for the government to admit his certification, *Cruickshank*, 837 F.3d at 1192 ("A United States Department of State certification of jurisdiction under the MDLEA does not implicate the Confrontation Clause because it does not affect the guilt or innocence of a defendant."). Accordingly, Defendants' motion to dismiss on this ground is denied, and their alternative request to argue jurisdictional facts to the jury is also denied.

### C. Due Process

Defendants next argue that, even if the action against them is consistent with the MDLEA, their prosecution violates the Due Process Clause. (Mem. 6–7.) The Second Circuit has found that, "[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (quoting *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003)). Seizing upon this language, Defendants insist that: (1) there is "no nexus between the *Sunshine* or its operations and the United States," since the vessel was not bound for the United States and there is no evidence Defendants had any ties to the United States, and therefore, (2) "application of the MDLEA to" Defendants violates due process. (Mem. 7.)

Again, Defendants' arguments are unpersuasive. At the outset, several circuits have rejected virtually identical assertions. *See, e.g.*, *United States v. Campbell*, 743 F.3d 802, 809–

10, 812 (11th Cir. 2014) ("[T]he Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking," even when there is no "nexus to the United States," since the MDLEA "provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas"); *United States v. Suerte*, 291 F.3d 366, 375 (5th Cir. 2002) ("[T]o the extent the Due Process Clause may constrain the MDLEA's extraterritorial reach, that clause does not impose a nexus requirement"); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993) ("[T]he government need not establish a domestic nexus to prosecute offenses" under the MDLEA; since "the trafficking of narcotics is condemned universally by law-abiding nations," there is "no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas."); *but see United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (concluding that due process requires a nexus in MDLEA prosecutions and that a nexus is found when "the plan for shipping the drugs was likely to have effects in the United States" (citation omitted)). And as Judge Rakoff recently noted in a comprehensive decision that persuasively rejected similar arguments, the Second Circuit has "repeatedly made clear that 'stateless vessels on the high seas are, by virtue of their statelessness, subject to the jurisdiction of the United States . . . even absent proof that the vessel's operators intended to distribute their cargo in the United States.'" *United States v. Prado*, 143 F. Supp. 3d 94, 98 (S.D.N.Y. 2015) (quoting *United States v. Henriquez*, 731 F.2d 131, 134 (2d Cir. 1984) and *United States v. Pinto-Mejia*, 720 F.2d 248, 260–61 (2d Cir. 1983)). This is because "'vessels without nationality are international pariahs,' and those aboard stateless vessels lack the protections of any country's law." *Id.* (quoting *Pinto-Mejia*, 720 F.2d at 261). Therefore, "[i]t is not arbitrary or fundamentally unfair to prosecute those who have renounced the legal world and 'constitute a potential threat to the order and stability of navigation on the high seas.'"

*Id.* (quoting *Pinto-Mejia*, 720 F.2d at 261). This position finds strong support in the Second Circuit's recent decision in *United States v. Epskamp*, which underscored that due process "does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." 832 F.3d 154, 169 (2d Cir. 2016); *see also id.* (noting that due process was satisfied in light of the fact that "Epskamp's behavior was 'self-evidently criminal'" (quoting *Al Kassar*, 660 F.3d at 119)).

Here, Defendants sailed a vessel "without nationality" and are alleged to have engaged in "self-evidently criminal" behavior – namely, transporting mass quantities of cocaine over the high seas. *Id.* Accordingly, it is clear that Defendants' prosecution is not inconsistent with the Due Process Clause.

### D. Article I, Sec. 8 – "Define and Punish Clause"

The Court next turns to Defendants' argument that their prosecution is unconstitutional as applied to them because they were not captured on the "high seas." (Mem. 8–10.) The Define and Punish Clause of Article I, Section 8 of the Constitution "grants Congress the authority '[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations.'" *United States v. Ballestas*, 795 F.3d 138, 146 (D.C. Cir. 2015) (quoting U.S. Const. art. I, § 8, cl. 10). As the D.C. Circuit has explained, the Define and Punish Clause "encompasses three distinct powers: (i) to define and punish piracy; (ii) to define and punish felonies committed on the high seas; and (iii) to define and punish offenses against the Law of Nations." *Id.* at 146–47 (citing *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59 (1820)). It is well settled that the MDLEA is a valid exercise of the second of these powers – namely, to "define and punish felonies committed on the high seas." *See, e.g.*, *id.*; *United States v. Garcia*, 182 F. App'x 873, 874 (11th Cir. 2006); *United States v. Matos-Luchi*, 627 F.3d 1, 3 (1st Cir.

12

2010); *United States v. Ledesma-Cuesta,* 347 F.3d 527, 532 (3d Cir. 2003); *United States v. Moreno-Morillo*, 334 F.3d 819, 824 (9th Cir. 2003).

Here, the State Department's certificate indicates that Defendants were identified approximately 300 miles off the coast of Bermuda. (Doc. No. 44-2.) Relying on this evidence, Defendants speculate that there is a possibility that they were arrested within Bermuda's Exclusive Economic Zone ("EEZ") – i.e., within 200 nautical miles of Bermuda's coast – since some evidence shows that "the Sunshine was pursued by the Coast Guard for many hours" and "travel[ed] a significant distance" before being intercepted. (Mem. 9.) Accordingly, Defendants request an evidentiary hearing to determine whether they were arrested within Bermuda's EEZ and surmise that, if they were in fact arrested within that territory's EEZ, then: (1) they were not arrested on the "high seas," and (2) the government cannot prosecute them pursuant to its authority under Article I, Section 8 to define and punish felonies on the high seas. (*Id.* at 9–10.) Defendants rely heavily on the definition of the term "high seas" under the United Nations Convention on the Law of the Sea ("UNCLOS"), which defines the "high seas" as "all parts of the sea that are not included in the exclusive economic zone, in the territorial sea or in the internal waters of a State." UNCLOS art. 86, Dec. 10, 1982, 21 I.L.M. 1245, 1286.

But Defendants' argument, in addition to being highly speculative, overrelies on the UNCLOS language and rests on several dubious legal premises. As Chief Judge McMahon has noted, "[i]n MDLEA prosecutions, courts have repeatedly recognized that the 'high seas' begin outside of a country's twelve-mile territorial waters, not outside the country's EEZ." *United States v. Montano Preciado*, No. 14-cr-874 (CM), 2016 WL 4184304, at *1 (S.D.N.Y. Aug. 4, 2016) (collecting cases); *see also Matos-Luchi*, 627 F.3d at 2 n.l (concluding that vessel was interdicted on the "high seas," notwithstanding the fact that it had been arrested within the Dominican Republic's EEZ); *cf. In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 209

F.3d 200, 202, 215 (2d Cir. 2000) (concluding that under the Death on the High Seas Act, the "'high seas' refers to those waters beyond the territorial waters of the United States" after conducting an exhaustive analysis of the historical understanding of the term "high seas"). Therefore, so long as the *Sunshine* was more than twelve nautical miles outside of Bermuda's territorial waters – which it indisputably was – it is clear that Defendants were on the "high seas" as that term is understood under the Define and Punish Clause.

More fundamentally, Defendants place undue emphasis on the location of their *arrest*. However, the text of Article I, Section 8 "is simple," as "it permits Congress to criminalize and exert its authority over 'felony offenses' in 'international waters.'" *United States v. Carvajal*, 924 F. Supp. 2d 219, 258 (D.D.C. 2013) (quoting *United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008)); *United States v. Sprague*, 282 U.S. 716, 731 (1931) (instructing courts to interpret the Constitution in a manner that accords with "normal and ordinary" meaning). Thus, "[u]ltimately, the place of seizure is irrelevant to the Court's jurisdiction once the Defendants were brought to this country inasmuch as the Court finds that the vessel in question traveled on the high seas." *Carvajal*, 924 F. Supp. 2d at 258. While the arrest of MDLEA defendants in a sovereign's territorial waters may present complications in the realm of international relations, it is for the executive branch – not individual defendants – to assert any interests foreign governments may have with respect to these prosecutions. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) ("[T]he historical gloss on the 'executive Power' vested in Article II of the Constitution has recognized the President's 'vast share of responsibility for the conduct of our foreign relations.'" (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610–611 (1952) (Frankfurter, J., concurring))); *cf. Greer*, 285 F.3d at 175 ("[T]he MDLEA requires the consent of foreign nations for purposes of international comity and diplomatic courtesy, not as a protection for defendants."). Therefore, "Congress's authority to criminalize conduct under the

Felonies on the High Seas Clause of Article I § 8 of the Constitution does not depend on where a vessel is seized, although it may be tempered by foreign relations executed by the Executive." *Carvajal*, 924 F. Supp. 2d at 259. Accordingly, even assuming, *arguendo*, that Defendants were arrested in Bermuda's territorial waters, the government may, consistent with Article I, Section 8 of the Constitution, prosecute them so long as the *Sunshine* "traveled on the high seas." *Carvajal*, 924 F. Supp. 2d at 258.

Defendants nonetheless insist that the Eleventh Circuit's decision in *United States v. Bellaizac-Hurtado* supports their argument that the indictment should be dismissed if they had been arrested in Bermudan territorial waters. (Mem. 11 (citing 700 F.3d 1245, 1258 (11th Cir. 2012)).) In *Bellaizac-Hurtado*, the Eleventh Circuit vacated the convictions of MDLEA defendants who had engaged in narcotics trafficking aboard a stateless vessel in the territorial waters of Panama. But even if the Court were inclined to agree with the Eleventh Circuit's reasoning in *Bellaizac-Hurtado* – which it does not – that case is readily distinguishable from the case here. Significantly, the government in *Bellaizac-Hurtado* relied exclusively on its authority to "define and punish . . . Offences against the Law of Nations," and the Eleventh Circuit premised its decision to vacate on its conclusion that "drug trafficking is not a violation of customary international law." *Bellaizac-Hurtado*, 700 F.3d at 1248–49, 1258. Therefore, *Bellaizac-Hurtado* is clearly inapposite to this case, since the government here has invoked its authority under a different subclause of Article I, which grants it authority to "define and punish . . . Felonies committed on the high Seas." art. I, § 8, cl. 10; (*see also* Doc. No. 51 at 15); *United States v. Macias*, 654 F. App'x 458, 461 (11th Cir. 2016) (explaining that *Bellaizac-Hurtado* has no application to a "prosecution under the MDLEA for drug trafficking crimes committed onboard a stateless vessel in international waters," since such a prosecution "is a constitutional exercise of extraterritorial jurisdiction under the Felonies Clause"); *Ballestas*, 795

F.3d at 147 ("Because the government in this case defends Congress's authority under the Felonies Clause, not the Law of Nations Clause, *Bellaizac–Hurtado* is of little assistance to [defendant]."); *see also United States v. Baston*, 818 F.3d 651, 667 (11th Cir. 2016) (observing that had the government in *Bellaizac–Hurtado* relied on a different provision of Article I, "we might have reached a different result").

In sum, the Court concludes that: (1) the government has the authority under Article I to prosecute Defendants; (2) an evidentiary hearing to determine the location of Defendants' arrest is unnecessary; and (3) Defendants' reliance on *Bellaizac-Hurtado* is entirely misplaced. The Court therefore denies Defendants' motion to dismiss on this ground as well.

### E. Venue

Defendants also argue that venue is improper. (Mem. 11–13.) Defendants do not contest that the government has satisfied the MDLEA's venue provision, since the Southern District of New York is the "district at which" they "enter[ed] the United States." 46 U.S.C. § 70504(b)(1); *see also* 18 U.S.C. § 3238 (providing that "all offenses begun or committed upon the high seas . . . shall be [tried] in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought"). Rather, Defendants accuse the government of engaging in "forum shopping" in directing cases to this district in order to avoid the impact of less favorable decisions issued in other circuits, such as *United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006) and *United States v. Bellaizac-Hurtado*, 700 F.3d 1258 (11th Cir. 2012). But Defendants fail to cite a single case where the venue provisions of the MDLEA or Title 18 were satisfied but the government's engagement in "forum shopping" warranted a transfer of venue. In any event, as even a brief perusal of Westlaw makes clear, the government continues to bring numerous cases under MDLEA in other circuits – in fact, this Opinion and Order addresses several recent decisions of the First, Eleventh, and D.C. Circuits affirming convictions under the

16

MDLEA. Thus, Defendants' complaints regarding forum shopping amount to nothing more than hollow rhetoric and fail to raise a cognizable basis for dismissal based on improper venue.

IV. CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion to dismiss (Doc. Nos. 41, 45) is DENIED. The parties are reminded that Suarez's sentencing is scheduled to take place on September 6, 2017 at 10:00 a.m., and Van Der End's sentencing is scheduled to take place on September 8, 2017 at 2:30 p.m.

SO ORDERED.

Dated: June 1, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/17