UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

GERSON PELAGIO SUAREZ,

Defendant.

No. 16-cr-453 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

The Court is in receipt of Defendant Gerson Pelagio Suarez's November 13, 2023 supplement to his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (*see* Doc. No. 200), which discusses and attaches several of Defendant's personal medical records. In light of the private medical information contained in this submission, the Court concludes that the presumption in favor of open records has been outweighed by Defendant's privacy interests. *See United States v. Amodeo*, 71 F.3d 1044, 1048–51 (2d Cir. 1995). Accordingly, IT IS HEREBY ORDERED THAT any such private medical information shall be redacted from Defendant's supplemental submission in advance of filing, as reflected in the attachment hereto, and the appended medical records shall be filed under seal. *See* Local Civil Rule 5.2, 2013 Committee Note.

The Court notes that, on November 22, 2023, it denied Defendant's motion for compassionate release without prejudice to renewal after his exhaustion of administrative remedies. (*See* Doc. No. 202.) Because Defendant describes his November 13, 2023 submission as a supplement to that prior motion, IT IS FURTHER ORDERED THAT the November 13, 2023 submission is likewise denied without prejudice to renewal following his proper exhaustion of

administrative remedies.  Nevertheless, because Defendant's November 13, 2023 submission also refers to 18 U.S.C. § 3582(c)(2), which allows a court to reduce "a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and which does not contain an analogous exhaustion provision, IT IS FURTHER ORDERED THAT Defendant shall submit a letter by December 28, 2023 informing the Court as to whether he intended to file a separate motion pursuant to 18 U.S.C. § 3582(c)(2) or whether he wishes to file that motion in tandem with a renewed – post-exhaustion – motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

The Clerk of Court is respectfully directed to docket this order and the redacted November 13, 2023 submission attached hereto, and to mail a copy of this order to Defendant Gerson Pelagio Suarez.

SO ORDERED.

Dated:          November 28, 2023
                New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES,<br>    Respondent,<br><br>    v.<br><br>Gerson Pelagio Suarez,<br>    Petitioner, pro se. | Case No.: 16-cr-453-2<br>SULLIVAN |

## SUPPLEMENT TO PETITIONER'S PENDING MOTION FOR A REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. §3582(C)(1)(A)

NOW COMES Gerson Pelagio Suarez (Petitioner), pro se, submitting this Supplement to his pending Motion and Memorandum requesting a reduction of sentence pursuant to 18 U.S.C. §3582(c)(1)(A). This Supplement to his original motion addresses changes to the U.S. Sentencing Guidelines now in effect as well as changes to Petitioner's health.

### I. BACKGROUND

Petitioner first filed a Motion and Memorandum requesting a sentence reduction on February 6, 2023. Petitioner's sentencing judge, the Hon. Judge Sullivan has been elevated to the Second Circuit Court of Appeals. To date, Petitioner's original Motion has been docketed, but not acted upon. Now, nine (9) months later, a deterioration in Petitioner's health, along with retroactive changes to the U.S. Sentencing Guidelines, requires Petitioner to update his original Motion with this Supplemental filing.

1

## II. NEW DEFINITION(S) OF EXTRAORDINARY AND COMPELLING CIRCUMSTANCES FOR COMPASSIONATE RELEASE

On November 1, 2023 amended USSC Guidelines went into effect. Among the changes relevant here, the USSC expanded the definition of "extraordinary and compelling" to include §1B1.13(b)(1)(C):

> The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death

Given no adjudication on the current Motion has occurred, the newly expanded Guideline 1B1.13 is the controlling legal standard when considering Motions pursuant to 18 U.S.C. §3582(c)(1)(A).



The federal Bureau of Prisons, and specifically the Health Services department at FCI Fort Dix where Petitioner is incarcerated, has failed to provide the required standard of care to diagnose and treat such conditions.



2





 Neutrophils.

These are specialized white blood cells that act as a person's first line of immuno-defense, according to the Cleveland Clinic. Information found on verywellhealth.com indicates that early stages of Leukemia, Lymphoma, or Myeloma cancer will cause low white blood cell counts, and lower levels of Neutrophils, a condition called Leukopenia.



According to the NIH, hemoglobin is a protein found in red blood cells that delivers oxygen to cells and removes carbon-dioxide. A proper level of hemoglobin is required to ensure the body's tissue received proper oxygenation. According to the American Diabetes Association, adult males must maintain a hemoglobin level between 14-18 g/dL. See www.ada.com "Hemoglobin Levels".



Chronic Lymphocytic Leukemia (CLL) is the most common type of Leukemia found in adults. CLL begins in the lymphocytes, a type of white blood cell. The American Cancer Society states that CLL builds up slowly, typically over a few years. Problematically, common symptoms, such as weakness, fatigue, weight loss, chills or fever, or swollen lymph nodes do not appear until the Leukemia cells have multiplied and spread from

one's bone marrow to the bloodstream.

The American Cancer Society states early stage CLL, referred to as "Rai stage" zero or 1 may only be recognized after blood tests reveal low levels of red blood cells (macrocytic Anemia), low white blood cell/Neutrophil count (Leukopenia) and reduced hemoglobin. These conditions often occur in combination in early-stage CLL just prior to the multiplication of Leukemia cells.

There are multiple tests a healthcare provider can use to determine whether a patient may have CLL. FCI Fort Dix Health Services has the ability to order these tests, which include a Complete Blood Count (CBC) with differential breakdown (meaning different types of red & white blood cells are identified), a Peripheral blood smear, and a Flow Cytometry test to identify the ZAP-70 and CD38 protein markers indicative of Leukemia. These three examples are the easiest and cheapest (as well as least invasive) initial tests that can be performed.

Doctors diagnose CLL based on the "Rai" system. According to the American Cancer Society, during Rai stage 0 no swelling of the lymph nodes, spleen, or liver needs to be present and red blood cell counts are "near normal." It is not until Rai stage three (3), considered high-risk, that red blood cell levels drop to the macrocytic anemia level.

E. Failure to Diagnose is Extraordinary and Compelling

Is it certain Petitioner has early-stage Chronic Lymphocytic Leukemia? No. But the BOP, through FCI Fort Dix Health Services, has a legal responsibility to provide the accepted standard of

6

medical care to protect Petitioner's current and future health. See DeShaney v. Winnebago Cnty Dept. of Soc. Services, 489 US 189, 199-200 (1989) (Finding the government has a duty and responsibility for the well-being of inmates); and Helling v. McKinney, 509 US 25, 33 (1993) (finding prison officials must protect the future health of inmates). Further, as a medical professional, Dr. Ahmedi is expected to recognize certain symptoms, conditions, or combinations of symptoms that may indicate a serious medical issue even if she is not a specialist in oncology.



Macrocytic Anemia and Leukopenia, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ are conditions that share one commonality: Leukemia or Lymphoma. Petitioner's family was able to discover this within 20-minutes of looking up his symptoms on reputable medical websites, no medical degree required. Yet Health Services, with their professional expertise, failed to recognize Petitioner's potential condition nor test for it.

And simple, non-invasive, cheap tests are available to

7

either rule out or provide more evidence of Chronic Lymphoma Leukemia. Yet Health services took no further action.

Amended subpart 1B1.13(b)(1)(C) states extraordinary and compelling reasons warrant compassionate release if a Petitioner requires specialized medical care, such as oncological care, that is not being provided. FCI Fort Dix Health Services's failure to recognize that Petitioner's combined hemotological issues may indicate early Leukemia; their failure to order readily-available tests to explore that potential diagnosis, and ████



████ ████ all demonstrate that proper care is not being provided.

Nor can Petitioner place faith in the BOP's future ability to provide proper diagnosis or care given their failures he has experienced thus far.

### IV. RETROACTIVE CHANGES TO USSG §4C1.1 NOW SUPPORT A REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. §3582(C)(2)

#### A. Change to the Guidelines

In May 2023, after finally being reconstituted with a full quorum of members, the US Sentencing Commission promulgated amendments and updates to the Sentencing Guidelines. Those updates took effect on November 1, 2023. Most are technical or mere textual updates and revisions. A notable few, however, are substantive and designed to bring needed relief.

One of the substantive changes, later made retroactive, is relevant here. After much study, it is now clear that criminal defendants who score zero criminal history points recidivate at a

significantly lower rate than those who score any criminal history points under USSG §4. See www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Armed with this knowledge, the Commission created what is essentially a new criminal history category for these "zero-point offenders".

Under the new §4C1.1, a qualifying defendant would have 2-levels reduced from his total offense level. For some defendants this would equate to a reduction of up to 30 months or more. But not every defendant with zero criminal history points qualifies for this reduction. The Commission carved out 9 subsets of offenders from this new benefit including (among others) sex offenders, terrorists, those who possessed a firearm or other deadly weapon, and human rights violators. See new §4C1.1(a)(2)-(10).

Ultimately, this retroactive change will affect thousands of inmates throughout the federal system. More importantly, it reflects a more nuanced and contemporary understanding of who needs a lengthy sentence and who does not. Based on the following, it is clear Petitioner is one who does not.

B. Legal Standard

Under §3582(c)(2), an inmate may petition the court for a reduction of his sentence if he was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission". This authority extends only to those amendments listed in §1B1.10(d). See United States v. Caceda, 990 F.2d 707, 710 (2nd Cir, 1993). See also

9

United States v. King, 813 Fed. Appx 690, 693 (2nd Cir, 2020).
Much like a motion made under the "compassionate release" portion
of this statute found at subsection (c)(1), courts engage in a
two-step inquiry. United States v. Deandrade, 2020 US Dist. LEXIS
82553 at *5-6 (SDNY, 5/11/20) (collecting cases). The inmate must
first demonstrate he would have been eligible for a lower
sentence if the amended guideline range had been in effect at the
time of his original sentence. See Dillon v. United States, 560
US 817, 826 (2010). If the answer to that first inquiry is
affirmative, the court may determine whether a reduction is
appropriate after considering the factors found at §3553(a).
United States v. Mock, 612 F.3d 133, 134 (2nd Cir, 2010). The
court may make additional findings of fact so long as they are
consistent with factual determinations made at sentencing. United
States v. Rios, 765 F.3d 133, 138 (2nd Cir, 2014).

## C. Petitioner Qualifies for a Reduction Under 18 U.S.C. §3553(a)

Petitioner is a Qualifying Inmate: A careful review of
Petitioner's underlying sentence and applicable Guidelines range
demonstrates he qualifies for a reduction under §3582(c)(2).

First, Petitioner was not convicted of any sort of
disqualifying offense. He was not given any sort of adjustment
related to terroristic activities under §4A1.4. See §4C1.1(a)(2).
No violence or credible threats of violence were part of this
offense. §4C1.1(a)(3). Nobody died as a result of his offense,
§4C1.1(a)(4), nor was he convicted of any kind of sex offense.
§4C1.1(a)(5). Petitioner did not cause any kind of financial

10

hardship, §4C1.1(a)(6), and he never possessed any kind of weapon. §4C1.1(a)(7). No adjustment was given for violating individual or human rights. §4C1.1(a)(8) & (9). Petitioner was also not engaged in any sort of continuing criminal enterprise. §4C1.1(a)(10). Therefore, none of the disqualifying factors under §4C1.1(a) apply to Petitioner.

Second, Petitioner's Guideline range changes with the application of §4C1.1. He was awarded no criminal history points under Chapter 4 of the guidelines. Petitioner was sentenced at Category I, Offense Level 40 representing a guideline range of 292-365 months. This Court sentenced Petitioner to the bottom of the guideline range at 292 months. Applying amended §4C1.1 now results in a sentence equivalent to Category I, total offense level 38 representing 235-293 months. Therefore, Petitioner has demonstrated he qualifies for a reduction pursuant to §3582(c)(2).

## V. FACTORS SET FORTH UNDER 18 U.S.C. §3553(a) CONTINUE TO SUPPORT PETITIONER'S REQUEST FOR A REDUCTION OF SENTENCE

Petitioner re-asserts his arguments regarding §3553(a) factors as presented in his Memorandum. Petitioner is not a danger to the American public. He has no prior criminal record, no history of violence, or deviant behavior. He will be deported upon release, further safeguarding the public.

The Government evaluated Petitioner's criminal conduct and determined a 60-month sentence appropriate as specified in their original plea offer. Petitioner's 292-month sentence represents a gross disparity between what the government thought appropriate

11

and what was given. Petitioner has now served over 7-years in prison - a period of incarceration that respects the law, provides deterrence, and represents just punishment relative to comparable defendants in the Southern District of New York.

## VI. CONCLUSION

Petitioner asserts he qualifies for a reduction of sentence under §3582(c)(2). He meets all of the criteria under the new USSG §4C1.1. All of the sentencing factors militate in favor of this reduction. He is precisely the kind of inmate the US Sentencing Commission now recognizes no longer requires a lengthy sentence as once believed. Granting this request would be an appropriate use of judicial discretion. However, Petitioner also exemplifies at-risk inmates amended guideline 1B1.13 is meant to help.

WHEREFORE all of the above reasons, Petitioner requests this Court grant his request for compassionate release, or, in the alternative, a reduction in sentence pursuant to USSG §4C1.1.

Respectfully submitted,

Dated: November 13, 2023

Gerson P. Suarez
Reg. No. 75878-052
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

12

## Certificate of Service

I, Gerson P. Suarez, do hereby certify that on this $\underline{/3}$ day of November, 2023, I served a true and accurate copy of the attached Motion for Reduction of Sentence on Respondent at One St. Andrew's Plaza, New York, NY 10007 via the official Inmate Legal Mail system of FCI Fort Dix, First Class US Mail, postage pre-paid.

Gerson P. Suarez

13

Gerson P. Suarez  75878-054
FCI Ft. Dix
PoBox 2000
Joint Base MDL, NJ 08640

United States Courthouse
500 Pearl Street, Room 120
New York, NY 10007-1312



RECEIVED
NOV 16 2023
CLERK'S OFFICE
S.D.N.Y.



USMP3
SDNY

Trenton PM
TUE 14 NOV